C. W. CARTER v. LAWRASON RIGGS AND MARY T. RIGGS, Trustees, Appellants.

**Contracts:** ACCEPTANCE: *Estoppel to deny.* Plaintiff leased land of defendant for several years and at an annual rent, to be paid on January 1st, immediately following the year for which it accrued; plaintiff to have the privilege of buying the property for a certain sum at the termination of the lease. In April of the last year, plaintiff informed defendant that he would give him the agreed amount and a proportionate amount of the rent for the last year in case he purchased before the close of the year, and would give him 30 days' notice of when he would make payment, which defendant accepted on condition that plaintiff would pay 8 per cent. interest on the purchase price in case payment was not made in thirty days. On September 21st plaintiff mailed a letter giving notice that he would make payment in thirty days, which defendant denied receiving. In October plaintiff instructed his bank to send defendant the purchase price and ten months' rent. The defendant telegraphed the bank that rent was due for the whole year, which the bank remitted, and informed defendant that it would leave the difference to be adjusted later. *Held,* that plaintiff was entitled to recover two months' rent from defendant, since it was too late, after plaintiff had raised the

money to make the purchase for defendant, to contend that he had never accepted plaintiff's offer to take a proportionate part of last year's rent.

**Involuntary Payment:**   WHAT IS:   *Recovery for money had and received.* Plaintiff instructed his bank to remit a certain sum to defendant in payment of land, and defendant, on request of the bank, telegraphed the amount due, which was larger than the plaintiff had authorized the bank to remit.

1    The bank informed defendant that it had not been able to obtain further instructions from plaintiff, but, to avoid delay, remitted the amount claimed by defendant, "leaving the difference to be adjusted later." *Held,* that the payment was not voluntary, and hence could be recovered as money received.

*Appeal from Lyon District Court.*—HON. F. R. GAYNOR, Judge.

THURSDAY, OCTOBER 18, 1900.

ACTION to recover excess of rent paid. From a judgment against them, defendants appeal.—*Affirmed.*

*C. J. Miller* for appellants.

*E. C. Roach* for appellee.

LADD, J.—On the twentieth day of September, 1886, the defendants, through their agent, W. P. Riggs, leased to the plaintiff 3,520 acres of land in Sioux county for the term of 11 years, beginning January 1, 1887, at the annual rental of 75 cents an acre after the first year, "payable on the first day of January of the year immediately following the year for which the said rent is reserved." Lessee also agreed to pay the taxes and make certain improvements, and it was stipulated that he "have the privilege and right of purchasing said land at any time between the first day of January, 1892, and the termination of this lease, at seventeen dollars per acre in cash." The plaintiff in October, 1897, procured necessary funds from the German Savings Bank of Davenport and di-

rected it to make payment and obtain deeds under the terms of the contracts. The bank inquired of Riggs the amount of rent required in additon to the purchase price, and was informed that for the entire year of 1897 would be exacted. Thereupon it remitted the sum demanded, November 1, 1897, saying: "Our instruction from Mr. Carter, under date of October 28, was to remit for 3,520 acres of land at $17, $59,840, plus rent of 75 ct. per acre per annum for 10 mos., $2,200; total, $62,040, as due Nov. 1. In comparing the two figures, I take it that, while he wants to pay rent for 10 mos., you claim 12 mos.—a difference of $440.00. I have not been able to obtain further instructions from Mr. Carter today, and, in order to avoid any delay remit the amount claimed by you, leaving difference to be adjusted later." This difference alone is in controversy in this action. It will be observed that the payment was not voluntary. The money was sent to avoid delay, without consulting Carter, and on the express condition that the difference should be adjusted by Carter and defendants at a later day. There was not only no previous dispute as to the item, but, as will be seen, a definite arrangement with reference to it had been made. True, the letter may be only a proposition; but, by retaining the money and making no objection, the defendants clearly accepted the condition named. Had they not wished to postpone the settlement of the comparatively small item of rent as suggested, they should have returned the draft. We know of no reason why such an understanding may not be had, and the rights reserved enforced. See *Lyman v. Lauderbaugh,* 75 Iowa, 481. The clause, "leaving difference to be adjusted later," has none of the elements of a protest. The wording of the letter clearly indicates that a voluntary payment was not intended, and the subsequent correspondence shows that it was not so understood.

II. But for the agreement of the parties, no little difficulty might be experienced in determining when liabil-

ity for the rent of 1897 attached. While the crops from the land may have been harvested before November 1st, the plaintiff was not bound to pay the purchase price until January 1st following, and the value of the use of the money for the two months might well off-set the proportionate part of the year's rent for the same period. And it plainly appears that this was the conclusion reached, through their correspondence. On March 27, 1897, Carter inquired of Riggs whether the trustees would accept the purchase price and a proportionate part of the year's rent if paid prior to January 1, 1898. Riggs on April 6th responded, declining to make any reduction. On the thirteenth of April, Carter asked for reconsideration, and suggested that payment for the proportionate part of the year would be fair, and that he would give 30 days' notice of his intention to pay. Riggs replied on the twenty-fourth, making this definite proposition: "That you be allowed to take up the lease according to its terms on the several quarters of land as you desire, provided you give thirty (30) days' notice of your intention to pay in full on that particular quarter; and, further, if at the expiration of the thirty days you have not settled for the deed, we will expect eight per cent. interest on the amount of the purchase price, with a proportionate part of the year's rental due then added to the purchase and this rate of interest will continue until the date of the draft to us over and above the 30 days' notice." There was no further correspondence until September 13, 1897, when Carter, in remitting money on past-due rent, said: "I expect to be ready to take deed for the lands soon, if the title does not make a hitch. Will give the desired 30-days' notice soon as I hear about the title." Riggs merely acknowledged the receipt of the money, and indicated the balance due. This was transmitted by Carter September 22d, and acknowledged by Riggs on the 27th. Up to this point there is no conflict in the evidence. Carter testified that he mailed a letter, properly addressed to

Riggs, September 21, 1897, advising him that he expected to pay and take up the land contracts in 30 days, and that he gave notice as "per your letter to this effect a couple of months ago." Riggs denied ever having received this letter. But the record discloses that on the twelfth of October he wrote Carter that: "The reason why I have not answered your recent letters has been the absence of my brother Lawrason from home for the past three months. I have now taken up the matters contained therein, and report that we will prepare the deeds for the various sections of Sioux county land." No letters were written by Carter in September or October, save those mentioned, and the conclusion is inevitable that the two recent letters concerning payment for the land were those to which reference was had. In any event, the district court could well have so found, and that the notice was received. Possibly, as contended, Riggs' proposition differed from that of Carter, and ordinarily must have been accepted by the latter within a reasonable time. No such objection, however, was interposed; and Riggs, with full knowledge, obtained from the letters to which he replied, that Carter was preparing to make payment in pursuance of his proposition, advised him that the trustees would make the deeds. After Carter had raised and tendered the money on the faith of this assurance, it was too late to question the acceptance of the original offer. The attempt to exact the additonal $440 under the circumstances disclosed merited the condemnation it has received. —AFFIRMED.

GRANGER, C. J., not sitting.